UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSE SANDOVAL SANCHEZ,

Defendant.

NO. CR-09-6047-EFS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND RELEASING DEFENDANT**

A pretrial conference was held in the above-captioned matter on December 17, 2009. Defendant Jose Sandoval Sanchez was present, represented by Nicholas Marchi. Assistant United States Attorney Alex Ekstrom appeared. Before the Court was Defendant's Motion to Dismiss Indictment (Ct. Rec. 31), which asks the Court to dismiss the Indictment on the grounds that the underlying deportation order is fundamentally flawed because his due process rights were violated when the immigration judge (IJ), and later the Board of Immigration Appeals (BIA), determined that the Antiterrorism and Effective Death Penalty Act (AEDPA) retroactively applied to him and therefore denied him § 212(c) relief from deportation.

ORDER ~ 1

The Government opposes the motion, contending that Defendant fails to establish a due process violation and prejudice. After reviewing the submitted material and relevant authority and hearing from counsel, the Court is fully informed. This Order supplements and memorializes the Court's oral dismissal.

**A.   Background**

Defendant obtained Legal Permanent Resident (LPR) status in 1987. In 1992, Defendant was charged with ten federal controlled substances crimes. He pled guilty on January 5, 1993, to a single count of Conspiracy to Distribute a Controlled Substance. (EDWA No. CR-92-0248-FVS.) On March 30, 1993, Defendant was sentenced to fifty-one months.

Deportation proceedings were commenced. In May 1993, the Immigration and Naturalization Service (INS) issued a Notice of Deportation. A deportation hearing was not held until May 1996; in the interim, on April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA).

AEDPA eliminated § 212(c) relief for aliens such as Defendant, who were convicted of a controlled substance crime. Prior to AEDPA, an alien convicted of certain controlled substances crimes could seek "§ 212(c) relief" from deportation if he served less than five years imprisonment. 8 U.S.C. § 1182(c) (as enacted prior to Public Law 104-132, April 24, 1996, 110 Stat. 1214). Specifically, in 1993, when Defendant pled guilty and was sentenced, § 212(c) stated:

> Nonapplicability of subsection (a)
>
> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful

unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provision of subsection (a) of this section (other than paragraph (3) and (9)(c)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. *The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years*.

(Emphasis added.)

This "§ 212(c) relief" was significantly reduced by AEDPA. The last sentence of § 212(c) was revised to read:

This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicated offenses are, without regard to the dates of their commission, otherwise covered by section 1251(a)(2)(A)(I) of this title.

Two months following AEDPA, Defendant's deportation hearing was held. Defendant sought a waiver of deportability under pre-AEDPA § 212(c). The IJ determined that Defendant was eligible to apply for § 212(c) relief given his years of continued residency in the United States, but determined that AEDPA's restrictive § 212(c) applied and thus Defendant could not obtain relief from deportation. Accordingly, the IJ entered a deportation order.

The BIA affirmed the IJ's decision, ruling that AEDPA applied. Defendant was deported. Then, on September 1, 2009, Defendant was charged with the instant offense.

**B.    Legal Authority and Analysis**

Collateral attack of the underlying deportation order is permitted if:

ORDER ~ 3

(1) the alien exhausted any administrative remedies that may
have been available to seek relief against the order; (2) the
deportation proceedings at which the order was issued
improperly deprived the alien of the opportunity for judicial
review; and (3) the entry of the order was fundamentally
unfair.

8 U.S.C. § 1326(d).   Defendant maintains that his removal order is

"fundamentally unfair."   To support this challenge, he must show 1) his

due process rights were violated during the underlying deportation

proceeding and 2) he suffered prejudice as a result.[1]   *United States v.*

*Zarate-Martinez,* 133 F.3d 1194, 1197 (9th Cir. 1998); *United States v.*

*Ubaldo-Figueroa,* 364 F.3d 1042 (9th Cir. 2004).

    1.   <u>Due Process</u>

    Defendant argues that his due process rights were violated because

the IJ, and the BIA, retroactively applied AEDPA's restrictive § 212(c).

As explained below, the Court agrees.

    *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), supplies the

analytical framework for retroactivity, which includes determining

whether the application of the statute to the conduct at issue results

in a retroactive effect.   A statute is impermissibly retroactive if it

"takes away or impairs vested rights acquired under existing laws, or

creates a new obligation, imposes a new duty, or attaches a new

disability, in respect to transactions or considerations already past."

*Id.* at 269 (internal quotation marks and citation omitted).

---

    [1]   Because Defendant is bringing a due process claim he is exempt

from the administrative exhaustion requirement.   *Garcia-Ramirez v.*

*Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005).   Nonetheless, Defendant did

appeal the deportation order.

ORDER ~ 4

The Supreme Court applied the *Landgraf* analytical framework in the immigration context in *INS v. St. Cyr* and concluded that "[the Illegal Immigration Reform and Immigrant Responsibility Act of 1996's (IIRIRA)] elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability, in respect to transactions or considerations already past.'" 533 U.S. 289, 321 (2001) (quoting *Landgraf*, 511 U.S. at 269). Although the Supreme Court was analyzing the retroactively of IIRIRA, and not its AEDPA counterpart, its retroactively analysis and conclusion apply equally to AEDPA.

In *St. Cyr*, the alien defendant pled guilty to a controlled substance crime prior to the April 24, 1996 IIRIRA. Removal proceedings were commenced in 1997 after IIRIRA. The Supreme Court determined that IIRIRA was not retroactively applicable to the convicted alien. In reaching this conclusion, the Supreme Court emphasized that consequences of deportation weigh into an alien defendant's decision to plead guilty. The Supreme Court stated, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 316 (citing *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990)). In addition,

> [t]here can be little doubt that, as a general matter, alien defendants considering whether to enter a plea agreement are acutely aware of the immigration consequences of their convictions. . . . Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

ORDER ~ 5

*Id.* at 323.[2]

Following *St. Cyr*, it is clear that the IJ and BIA impermissibly applied AEDPA's § 212(c) to Defendant.  The Government submits that the Defendant must present evidence establishing that he relied on the pre-AEDPA § 212(c).  Although the defendant in *Ubaldo-Figueroa* submitted evidence relating to his reliance on pre-IIRIRA law during his plea negotiations, the Court concludes that Defendant need not present such evidence.  *St. Cyr* did not require actual evidence of reliance on the prior deportation law, but rather presumed that deportation consequences were part of an alien's considerations during plea bargaining.  533 U.S. at 322 ("There can be little doubt that, as a general matter, alien defendants considering whether to enter a plea agreement are acutely

---

[2]  The Ninth Circuit has recognized that central to the Supreme Court's analysis in *St. Cyr* was the nature of a plea agreement and a defendant's reliance on the existing deportation law when the plea was entered.  *Saravia-Paguada v. Gonzales*, 488 F.3d 1122, 1130 (9th Cir. 2007).  Accordingly, the Ninth Circuit limits *St. Cyr* to defendants who enter a guilty plea; the Ninth Circuit determined that retroactive application of AEDPA or IIRIRA to a defendant found guilty *by a jury* is permitted.  *See Armendariz-Montoya*, 291 F.3d 1116 (9th Cir. 2002) (deciding that a jury-convicted alien's due process rights were not violated by application of AEDPA); *United States v. Herrera-Blanco*, 232 F.3d 715, 719 (9th Cir. 2000) (applying AEDPA to aliens convicted after a jury trial does not result in a retroactive effect).

ORDER ~ 6

aware of the immigration consequences of their convictions."). In addition, the Ninth Circuit in *Saravia-Paguada* discusses an alien's "reliance *interest*," not actual reliance. 488 F.3d at 1133. Therefore, the Court concludes that Defendant need not set forth specific evidence that he relied on pre-AEDPA law when entering into the plea agreement.

Regardless, the plea agreement ensured Defendant that the Government would recommend a fifty-one-month sentence and move to dismiss the other counts, including count 8, which subjected Defendant to a mandatory minimum sentence exceeding five years. Further, Defendant was sentenced to fifty-one months prior to AEDPA. For these reasons, the Court finds that Defendant has a reliance interest of seeking pre-AEDPA § 212(c) relief from deportation. Accordingly, Defendant's due process rights were violated when the IJ, and BIA, retroactively applied AEDPA's restrictive § 212(c) to Defendant.

2.   Prejudice

Notwithstanding a due process violation in the deportation proceeding, Defendant must show that he suffered prejudice as a result. *See United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004). To do this, Defendant must show that "an IJ could have concluded that [his] potential claim for relief from deportation would be 'plausible.'" *Id.* at 1104. The Court concludes Defendant establishes a plausible claim given the IJ's finding that Defendant "was eligible to apply [for § 212(c) relief] prior to the recent amendment of the statute." Given this finding, the Court determines it is unnecessary to balance the positive and negative equities relating to Defendant's claim for discretionary relief from deportation. *Cf. Pallares-Galan*, 359 F.3d at 1104 (remanding

ORDER ~ 7

to district court to balance the equities).  Defendant has established
prejudice.

**C.    Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED:**

1.    Defendant's Motion to Dismiss Indictment **(Ct. Rec. 31)** is
**GRANTED**.

2.    Defendant shall be **RELEASED** from U.S. Marshal custody.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter
this Order and to provide copies to all counsel, the U.S. Probation
Office, and U.S. Marshal's Office.

**DATED** this  18th   day of December 2009.


                        s/Edward F. Shea
                        EDWARD F. SHEA
                United States District Judge

Q:\Criminal\2009\6047.dism.wpd

ORDER ~ 8